UNION PACIFIC RAILWAY COMPANY v. SAMUEL MONTGOMERY ET AL.

FILED OCTOBER 21, 1896.  No. 6840.

1. **Municipal Corporations:** ORDINANCES: PUBLICATION: EVIDENCE. An ordinance of a city of the second class containing over 5,000 and less than 10,000 inhabitants, which carries a penalty for a violation of its provisions, before it becomes effective, must be published for at least one week in a.newspaper published within such city, or in pamphlet form for distribution or sale.

2. ——: ——: ——. If published in a daily paper, one insertion is not sufficient, but it must be published in each issue thereof for one week.

3. ——: ——: ——: EVIDENCE. Ordinances of a city of the above class may be proved by the certificate of the city clerk under the seal of the corporation. If the certificate shows that the ordinance was not published for the statutory time, it is not admissible in evidence without further proof.

4. Instructions: EXCEPTIONS. An exception to instructions *en masse* is unavailing unless each paragraph thereof is erroneous.

5. ———: ASSIGNMENTS OF ERROR. An assignment in a motion for a new trial that a group of instructions is erroneous, is insufficient, if one of them was properly given.

ERROR from the district court of Douglas county. Tried below before OGDEN, J.

*W. R. Kelly, E. P. Smith,* and *John Schomp,* for plaintiff in error.

*Mahoney & Smyth, contra.*

NORVAL, J.

On the 6th day of April, 1892, one Peter J. McNalley, of the firm of Montgomery & McNalley, dealers in pop, soda, and mineral water, attempted to cross, with a team and wagon, the tracks of the Union Pacific railway at the Q street crossing in South Omaha, and in doing so one of defendant's engines ran into the wagon, demolishing it, destroying a quantity of soda water in bottles. Plaintiffs brought this action to recover damages thereby sustained, alleging that the accident was occasioned by defendant's negligence. The verdict and judgment were in favor of plaintiffs, and the railway company has brought the record here for review.

The first error assigned consists in the admission in evidence of the following copy of an ordinance of the city of South Omaha regulating the rate of speed of railroad engines and trains within the corporate limits, viz.:

"CITY ORDINANCE No. 87.

"An ordinance regulating the rate of speed of locomotives and railroad trains within the corporate limits of the city of South Omaha.

"*Be it Ordained by the Mayor and Council of the City of South Omaha:*

"Section 1. That the speed of railroad trains and locomotives running through and across the corporate limits

of the city of South Omaha, Nebraska, shall not exceed the rate of ten miles an hour.

"Section 2. That any person or corporation who shall violate section one of this ordinance shall, upon conviction thereof, be fined for each offense in any sum not exceeding one hundred dollars, and costs of suit.

"This ordinance to go into effect and be in force on and after its passage, approval, and publication.

"Approved September 4, 1888.          W. S. SLOAN,
"THOMAS HECTOR,                              Mayor.
          "City Clerk."

One of the objections to the admission of this ordinance in evidence, and the only one it is deemed necessary to consider, is that its passage and publication were not proved. The only proof offered to show that the ordinance was legally passed by the city council of South Omaha, or that it was duly published, was the following certificate of the city clerk:

"I, Henry Ditzen, clerk of the city of South Omaha, Nebraska, do hereby certify that ordinance 87, a copy of which is on the reverse side hereof, was passed and approved on the 4th day of September, 1881; that said ordinance was published in the South Omaha Daily Stockman, a newspaper printed and published in the city of South Omaha, Nebraska, on the 5th day of September, A. D. 1888.

"[SEAL.]                     HENRY DITZEN,
                                   "City Clerk."

By section 51, chapter 14, article 2, of the Compiled Statutes, relating to cities of the second class having more than 5,000 and less than 10,000 inhabitants, it is provided that "all ordinances of a general nature shall, within one month after they are passed, be published in some newspaper published within the city, or in pamphlet form, to be distributed or sold as may be provided by ordinance; and every ordinance fixing a penalty or forfeiture for its violation shall, before the same takes effect, be published

for at least one week in the manner above prescribed."
Subdivision 40 of the next following section declares:
"All ordinances of the city may be proved by the certifi-
cate of the clerk, under the seal of the city, &ast; &ast; &ast; shall
be read and received in evidence in all courts and places
without further proof." The provision last quoted au-
thorizes the fact of the passage, approval, and publication
of the ordinance of a city of the class to which South
Omaha then belonged to be proved or established by the
certificate of the city clerk. That the passage and ap-
proval of the ordinance in question was sufficiently veri-
fied by the certificate of the city clerk given above is not
controverted, but it is insisted that such certificate does
not disclose that the ordinance was published for the time
required by said section 51; and we think this contention
is well founded. The ordinance fixes a penalty for its
violation, and, under the provisions of said section 51,
such an ordinance must be published at least for one week
before it could become effective. The certificate of the
clerk shows that it was published but once in a daily pa-
per. The publication having been made in a daily paper,
it should have been continued in each issue thereof for
one week. One insertion alone did not meet the require-
ments of the statute. (*Lawson v. Gibson*, 18 Neb., 137;
*Hull v. Chicago, B. & Q. R. Co.*, 21 Neb., 371.) Had the
paper in question been published weekly, then one inser-
tion therein, doubtless, would have been sufficient. (*State
v. Hardy*, 7 Neb., 377.)

We are asked to indulge the presumption that the *Daily
Stockman*, in which the ordinance was published, was a
weekly newspaper. This we cannot do, since its name
implies that it was a daily and not a weekly publication.

It is urged that the same presumption prevails in favor
of the validity of an ordinance that there is in favor of the
validity of a judgment or of an act of the legislature.
Grant it. But it will not be presumed that a legislative
enactment was duly passed or proved when the contrary
appears. So we cannot presume that this ordinance was

published in the mode provided by law, when it is manifest from the certificate of the city clerk that the opposite is true.

It is insisted that there is no proof that South Omaha, in 1888, at the time of the passage of this ordinance, was a city of the second class having more than 5,000 inhabitants, and, therefore, that section 59, article 1, chapter 14, Compiled Statutes, and not said section 51 of article 2 of said chapter, governs as to the publication of said ordinance. No such proof was necessary, since we will take judicial notice of the fact that South Omaha at that time contained the requisite population to be governed by the provisions of said article 2. (*Hornberger v. State,* 47 Neb., 40.)

Another suggestion made is that the first section of the ordinance is valid for the reason one publication is sufficient as to it, since it does not impose a penalty. Doubtless there are ordinances in which parts may be upheld, while others are rejected as invalid. But this ordinance does not belong to that class. The statute expressly requires that an ordinance which prescribes a penalty shall be published in a certain manner and for a specified period. This requirement applies to the whole of such an ordinance, and not merely to the penal portion. Such is the plain import and meaning of the statute. The admission of the ordinance in evidence was a link in the chain of testimony to establish that the defendant negligently operated its engine at an unlawful rate of speed, and its introduction was prejudicial error, because its publication for the required time was not proven.

Complaint is made in the brief of the railway company to the giving of the sixth instruction on the court's own motion, and of the refusing of the defendant's fifth and twenty-second requests to charge. The record shows that the company at the trial excepted to the instructions *en masse,*—those given as well as those refused,—and they were grouped in the assignment in the motion for a new trial. The exception to the instructions is insufficient to

32

lay the foundation for their review. (*McReady v. Rogers*, 1 Neb., 124; *Strader v. White*, 2 Neb., 360; *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473; *Redman v. Voss*, 46 Neb., 512.) The assignment in the motion for a new trial is bad, inasmuch as there was no error in one or more of the instructions given, and at least one of the group requested was properly refused. (*Diers v. Mallon*, 46 Neb., 132; *Kaufmann v. Cooper*, 46 Neb., 644; *McCormal v. Redden*, 46 Neb., 777.)

There are other errors assigned, based upon the rulings of the court upon the admission and exclusion of testimony, which we need not stop to consider, as they will not likely arise upon the next trial. For the error already indicated, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.