CHICAGO, ST. P., M. & O. RY. CO. v. BANCROFT DRAINAGE DIST.

(Circuit Court of Appeals, Eighth Circuit. December 24, 1914.)

No. 4146.

DRAINS ☞76—DRAINAGE BOARD—NOTICE OF HEARING—PUBLICATION.

Under the rule of decision in Rev. St. Neb. 1913, § 1877, relating to the apportionment of benefits for a drainage improvement, and providing that "a notice shall be inserted for at least one week in a newspaper published at the county seat stating the time when, and the place where, the directors shall meet for the purpose of hearing all parties interested in the apportionment of benefits by reason of the improvement, the word "for" is equivalent to "during," and notice is required to be published at least during the week immediately preceding the meeting. If the publication is made in a weekly paper and the first publication is more than a week before the date of the meeting, it must be continued in the subsequent issues until that time.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 76-81; Dec. Dig. ☞76.

For other definitions, see Words and Phrases, First and Second Series, For.]

Reed, District Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Wm. H. Munger, Judge.

Action by the Bancroft Drainage District against the Chicago, St. Paul, Minneapolis & Omaha Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

Wymer Dressler, of Omaha, Neb. (George W. Peterson, of St. Paul, Minn., and Edgar R. Hart and A. A. McLaughlin, both of Omaha, Neb., on the brief), for plaintiff in error.

P. M. Moodie and O. C. Anderson, both of West Point, Neb., for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. This case involves the validity of an assessment levied by the Bancroft drainage district in Nebraska against the right of way and lands of the railway company. The gross cost of the work was charged against the property in the district and apportioned among the several tracts and parcels according to units of benefit. A statute of Nebraska required that:

"A notice shall be inserted for at least one week in a newspaper published at the county seat, stating the time when, and the place where, the directors shall meet for the purpose of hearing all parties interested in the apportionment of benefit by reason of the improvement." Section 1877, R. S. Neb. 1913.

The directors of the district fixed their meeting for September 11, 1909. The notice was published in a weekly newspaper of the issue of September 3d, but not in the next issue of September 10th, the day before the hearing. It is conceded that the railway company had no actual knowledge of the organization or proceedings of the district or of the hearing referred to. The principal question here is of the sufficiency of the publication. The district contends that the statutory requirement is satisfied by one publication in a weekly newspaper if made at least one week before the hearing regardless of a longer time intervening. The railway company contends that, if the first publication is more than one week before the hearing, it should be followed by insertions in each issue of the newspaper up to the date fixed, and therefore in the present instance there should have been a publication on the 10th of September. The trial court with some doubt held with the district.

In Nebraska such statutes must be literally complied with. The publications required are jurisdictional. Leavitt v. Bell, 55 Neb. 57, 64, 75 N. W. 524; Wakeley v. Omaha, 58 Neb. 245, 78 N. W. 511. There are two lines of decisions of the Supreme Court of that state each resting upon the peculiar statutory phrase employed. In Lawson v. Gibson, 18 Neb. 137, 24 N. W. 447, the phrase was "for at least thirty days before the day of sale, by advertisement in some newspaper." The court adopted the doctrine of Whitaker v. Beach, 12 Kan. 493, and held that:

"The notice must be first published at least thirty days before the day of sale, and continued in each successive issue of the paper up to the day of sale."

In the Kansas case the court held that "for" meant "during." It said:

"Such is a common signification of the word, and unless it have that meaning here it is entirely superfluous. If the Legislature intended that a single insertion in the paper should be sufficient, they would have expressed this

intention much more clearly by omitting 'for,' and saying only 'at least thirty days.' "

In Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524, the expression was "for at least six days prior." The court said:

"The word 'for' in that phrase means 'during,' and the phrase must be construed as though it read that the city council shall give notice of its sitting as a board of equalization at least during the six days immediately prior to the date of its so convening."

Lawson v. Gibson, supra, was followed, and the court approved Scammon v. Chicago, 40 Ill. 146, where the statute provided:

"Notice shall be given by said commissioners by six days' publication in the corporation newspaper."

State v. Cherry County, 58 Neb. 734, 79 N. W. 825, involved the publication of a proposition to issue bonds to be voted upon at an election. The statute required the question with a statement of the details "to be published for four weeks in some newspaper published in the county." It was inserted in four successive weekly issues, but the election day was less than a week after the last. The court again announced the equivalence of "for" and "during" and said:

"The statute is not complied with unless the notice is published during four weeks preceding the election. Four weeks must intervene between the first publication and the election."

It may be observed that, when not otherwise provided, a publication may be made in either a weekly or a daily newspaper. One publication in a weekly covers the period until the next issue; but if a daily is selected the insertion must be in each daily issue during the time. In Shannon v. Omaha, 72 Neb. 281, 100 N. W. 298, a special assessment was held invalid for lack of sufficient notice of a meeting of the city council to equalize the levy. The statute required a notice of the sitting "for at least six days prior thereto." Publications were made seven consecutive days ending with March 20th. The court cited Leavitt v. Bell, supra, and said:

"According to this rule the notice should have been published for the six days immediately prior to the 24th day of March, and, this not having been done, the notice was invalid."

In the other class of cases the statutory phrases are held to signify the number of publications instead of the duration of time. In Davis v. Huston, 15 Neb. 28, 16 N. W. 820, the statute read, "The publication must be made four consecutive weeks in some newspaper." It was held that:

"The notice should be printed in a weekly newspaper for four weeks successively, etc., and that the publication is deemed complete upon the distribution of the newspaper containing its fourth successive weekly insertion."

The requirement in Alexander v. Alexander, 26 Neb. 68, 41 N. W. 1065, was a publication "three weeks successively" previous to the time appointed, and it was held to have been complied with by a publication once each week for three successive weeks—three weekly publications.

In Claypool v. Robb, 90 Neb. 193, 133 N. W. 178, the phrase was "the publication must be made four consecutive weeks." A publication in a weekly newspaper once each week for four weeks successively was held sufficient; also, that the publication should be made in all the issues per week of the newspaper selected, if there were more than one.

State v. Hanson, 80 Neb. 724, 115 N. W. 294, involved a publication of a notice of election under another section of the drainage statute. It required the county clerk to "publish a notice once each week for three weeks in a newspaper." The court held that the phrase meant the number of publications rather than the duration of the notice. Various decisions of the court were reviewed with this conclusion:

"There is no conflict in the authorities cited. Where the time mentioned by the statute expresses the duration of the notice, the same must be published for and during the time mentioned. Where, however, the time mentioned indicates only the number of times the notice is required to be published, it is satisfied if the notice is published the number of times mentioned. It is apparent that the phrases, 'shall publish a notice once each week for three weeks' and 'a notice shall be given for three weeks by publication,' have different meanings. In the first 'for three weeks' limits the number of publications, and in the other phrase 'for three weeks' fixes the period of time during which the publication must be made."

The expression "for at least one week" in the statute before us falls in the first class of cases mentioned and signifies the duration of the notice; and a week or more of publication should be the week or more immediately before the time of hearing. Leavitt v. Bell, supra. As said in State v. Hanson, supra, the notice must be published "for and during" the time. If in the judgment of the directors of the district the conditions require a longer notice than one week, the publication should be made for and during the longer period. In other words, the statute would not be satisfied by one insertion of the notice long in advance of the day fixed. No step in all the proceedings of the drainage district is more important to the property owners than the decision upon the units of benefit and the apportionment and charging of the cost of the improvement against their property. The clash of individual interests arises then in which the judgment of the public officials, not their discretion, is invoked, and notice to the property owners with opportunity to be present and to be heard in protection of their relative rights is a vital part of the machinery prescribed by the statute. The distinction between the two kinds of publications is suggested in the very section of the statute in which the one before us occurs. The publication or insertion of a notice of the hearing "for at least one week" is first required. Next, the directors must file with the county clerk their completed apportionment and publish a copy of it "once each week for three consecutive weeks in a newspaper." Other sections of the same article are similarly significant. Whether a drainage district shall be formed and, if so, who shall be its directors, is determined at an election on a day fixed by the county clerk. Section 1870 provides that the clerk shall "publish a notice once each week for three weeks in a newspaper," stating among other things the time and place of the election. Section 1882 requires that the board of directors "shall

give notice by publication once each week for three consecutive weeks" of a proposed issue of bonds; and section 1914 requires the publication of "a notice once each week for three consecutive weeks" of an election to vote whether certain work shall be done and the liability incurred.

It is contended that the distinction drawn in the decisions is between giving notice and publishing notice, but we are unable to find where the state court has so held. Cuming County v. Bancroft Drainage District, 90 Neb. 81, 132 N. W. 927, is cited. It did not involve the question here. The expression in the opinion of the court that "due notice of the filing of the report was given" refers to the report made after the meeting at which the benefits were apportioned. The question here is as to the notice of the meeting. None is made as to the subsequent notice of the report filed with the county clerk. Several cases of the publication of city ordinances are cited, but they are not in point. Our attention is also directed to a recent opinion of the Supreme Court of Nebraska in White v. Papillion Drainage District (Neb.) 147 N. W. 218. The court said:

"The notice of apportionment of benefits must be published at the county seat of each county, in which the lands of the district lie, for at least one week, but it is not necessary that it be published daily; if it is published in a weekly paper one week before the meeting for apportionment, it is sufficient."

Counsel also present a copy of the printed record in that case to show there was the same omission in publication as in the case at bar; that is to say, the insertion was in but one issue of a weekly newspaper more than a week before the meeting. We are not authorized to go into the record in that case. The opinion of the court is what is authoritative, not what it might have decided had its attention been directed to some other matter. Obviously the objection was that the publication should have been made in a daily instead of a weekly newspaper, and the court correctly denied it.

The judgment is reversed, and the cause remanded for a new trial.

REED, District Judge (dissenting). I am unable to concur in the conclusion reached in the foregoing opinion. The statute in question requires a notice of the meeting of the directors to apportion benefits to be "inserted for at least one week in a newspaper published at the county seat" stating the time when and the place where the meeting shall be held. The directors of the drainage district selected a weekly newspaper published at the proper county seat in which the notice should be published, and a sufficient notice was published in such paper in its regular issue of Septmber 3, 1911; but it was not published in the succeeding issue of September 10th, which was the day before the time fixed for the meeting. The opinion holds that the meeting of the directors on September 11th, and the apportionment of benefits then made were unauthorized and void because the notice was not also published in the paper of September 10th. A weekly newspaper may rightly be selected in which to publish the notice; and one publication in a regular issue of such paper would satisfy the requirement of the statute if it was one week before the time fixed for

the meeting. Was the publication of September 3d one week before the meeting of September 11th? A statute of Nebraska provides:

"The time within which an act is to be done as herein provided, shall be computed by excluding the first day and including the last; if the last be Sunday, it shall be excluded." Section 1841, Cobbey's Annotated Statutes of Nebraska; 1909.

And this act applies to publications of legal notices. Pelton v. Drummond, 21 Neb. 495, 32 N. W. 593. In the cited case a petition was filed in the office of the village board on the 3d day of June, 1886, for a license to sell liquors in the village. The statute provided:

"No action shall be taken upon said application until at least two weeks' notice of the filing of the same has been given by publication in a newspaper published in said county."

A sufficient notice of the application was published in the proper newspaper in its issues of June 5th, 12th, and 19th, stating that the applicant would apply to the village board for a license on the third Friday in June, which was the 18th day of that month. The board met on the third Friday in June in regular session, and Tuesday, the 22d day of June, commencing at 7 o'clock p. m. was appointed for the hearing upon said application. The court said:

"What action could the board take until the expiration of that time? Simply none. The Civil Code provides that: 'The time within which an act is to be done as herein provided shall be computed by excluding the first day and including the last. If the last day be Sunday it shall be excluded.' The language of this act requires the application of this rule in the computation of the time during which notice is to be given. Saturday the 5th day of June must be excluded. Two weeks then would expire with Saturday, the 19th. As Sunday must be excluded, Monday, the 21st, would have been the first day on which the board could have taken any action whatever in the premises."

Reviewing the decisions of the Supreme Court of Nebraska, the majority holds that the word "for" in a statute similar to the one in question, when it expresses the duration of the time of the publication requires that the notice must be published during the time mentioned; but, when it indicates only the number of times the notice is to be published, the statute is satisfied if the notice is published the number of times specified, and such is the holding of the Nebraska courts.

The meeting of the board of directors in question was fixed for September 11th. The notice was published in the regular issue of the paper on September 3d. The requirement of the number of publications was therefore satisfied; and, if the period of time during which the notice must be published is also satisfied, then the meeting of September 11th was authorized and the apportionment of benefits lawfully made. The day of the publication, September 3d, must be excluded in computing the time of the publication, and the week during which the notice was required to be published expired with September 10th. Pelton v. Drummond, above. The meeting of the board of directors was therefore fixed for the earliest possible date that it could be under the Nebraska statute, and the notice thereof published for the full time required by the statute. In the cited cases of the majority opinion, meetings of the city councils and of boards of directors, and the dates of judicial sales as the case may be, were in all cases held be-

fore the notice thereof was published for the time required by the statute in the particular case. In State v. Hanson, 80 Neb. 724, 115 N. W. 294, the question of the requirement of publication of notice under the drainage statute of Nebraska was involved. The opinion reviews the prior decisions of the Supreme Court of that state and says:

"It is apparent that the phrases 'shall publish a notice once each week for three weeks,' and 'a notice shall be given for three weeks by publication,' have different meanings. In the first 'for three weeks' limits the number of publications, and in the other phrase 'for three weeks' fixes the period of time during which the publication must be made. Alexander v. Alexander, above, is in point and should be followed."

In Alexander v. Alexander, 26 Neb. 68, 41 N. W. 1065, a statute requiring the publication of a notice for three successive weeks previous to the time for a hearing upon the probate of a will was involved, and it was held that publication once each week for three successive weeks was sufficient, though the last publication was less than 21 days from the first. The hearing was 16 days later than the first publication.

It is said that the notice in question falls within the first class of notices mentioned in State v. Hanson; if so, the statute is fully satisfied by one publication in a weekly newspaper; and, if such publication is "at least one week" before the apportionment meeting, the requirement of the statute is satisfied as to the duration of the publication. The statute does not require that the meeting shall be held upon the last day of the week for which the notice is required, and the meeting may rightly be held the day following the expiration of the week after the publication. Pelton v. Drummond, above. Of course, a meeting for the apportionment of benefits held long after one publication of a notice in a weekly newspaper as suggested, though that be for one full week, would not be a compliance with the statute; neither would a meeting held long after any number of publications, if more than one was required; but a meeting fixed for and held the day following the expiration of one week is not, it seems to me, vulnerable to such a criticism.

See, also, White v. Papillion Drainage District (Neb.) 147 N. W. 218, where it clearly appears that the sufficiency of the notice of the meeting for the apportionment of benefits was called in question, and the court says:

"The notice of apportionment of benefits must be published * * * for at least one week, but it is not necessary that it be published daily; if it is published in a weekly paper one week before the meeting for apportionment, it is sufficient."

I think that the number of publications of the notice and the duration thereof were in strict compliance with the requirements of the statute, and that the judgment should be affirmed.